UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LIVINGSTON CHRISTIAN SCHOOLS**, a Michigan nonprofit corporation

        Plaintiff,

v.

**GENOA CHARTER TOWNSHIP**, a Michigan municipal corporation,

        Defendant.

_____/

**MYERS & MYERS, PLLC**
Roger L. Myers (P49186)
Matthew M. Hagerty (P66015)
915 N. Michigan Avenue
Howell, MI 48843
Attorneys for Plaintiff
_____/

Case no. _____
Hon.
Magistrate:

**CIVIL COMPLAINT AND
REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff LIVINGSTON CHRISTIAN SCHOOLS ("LCS"), by and through its attorneys, Myers & Myers, PLLC, hereby files this Civil Complaint and Request for Injunctive and Declaratory Relief against Defendant Genoa Charter Township, and in support thereof states as follows:

## PARTIES

1. Plaintiff LCS is a Michigan corporation. Its principal place of business is located at 550 E. Hamburg Street, Pinckney, MI 48169.

2. Plaintiff LCS provides full-time school, pre-kindergarten through 12th grade, approved by the Michigan Department of Education to meet all the requirements of non-public schools. LCS provides a comprehensive curriculum that offers students a broad range of both academic and religious subjects, including faith-based religious teachings, mathematics, computers, science, social studies, health, and physical education. LCS is currently operating at 550 E. Hamburg Street, Pinckney, MI 48169.

3. Defendant Genoa Charter Township ("Township") is a Michigan municipal corporation created and existing by virtue of the laws of the State of Michigan and is empowered to act through its governing body, its officials, employees and official bodies.

4. The Township's principal place of business is 2911 Dorr Road, Brighton, MI 48116.

## JURISDICTION AND VENUE

5. For the purposes of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*, LCS constitutes a religious assembly or institution.

6. This Court has original federal question jurisdiction over LCS's claims of violations of RLUIPA, pursuant to 28 U.S.C. § 1331.

7. LCS has standing as a claimant under RLUIPA subject to a land use regulation that affects the use of land over which it has an existing, written leasehold interest under 42 U.S.C. § 2000cc-5(5).

8. The Township is a government within the meaning of 42 U.S.C. § 2000cc-5(4) (A), and is subject to the jurisdiction of this Court thereunder.

9. This Court has personal jurisdiction over Defendants because Defendants reside and conduct

business in the State of Michigan.

10. LCS's claims for declaratory relief are sought under 28 U.S.C. § § 2201 and 2202.

11. Plaintiff seeks injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1343.

12. LCS's claims for attorneys' fees and costs are predicated upon 42 U.S.C. § § 1988, which authorize the award of attorneys' fees and costs to prevailing parties.

13. LCS's claims for declaratory and injunctive relief are authorized by 28 U.S.C. § § 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the equitable powers of this Court.

14. Venue is proper under 42 U.S.C. § 1391 because the subject property is located within this District, and the acts described herein occurred within this District.

## NATURE OF THIS ACTION

15. This is an action for declaratory and injunctive relief arising out of the Township's violations of RLUIPA.

16. The Township has not identified any compelling government interest for denying the Special Use Permit on behalf of LCS for its operation of a Christian K-12 school.

17. The Township has failed to enforce its Zoning Ordinance in the least restrictive means possible.

18. The Township has unlawfully imposed and implemented a land use regulation that imposes a substantial burden upon the rights of LCS and its students to the free exercise of religion by means that the Township itself recognizes are not the least restrictive means available to the Township to protect its asserted governmental interest.

**FACTUAL BACKGROUND**

19. LCS was incorporated in 2005 "to support and/or operate a Pre-Kindergarten through 12th grade Christian school for the Livingston County community." See Articles of Incorporation attached hereto as **Exhibit 1**.

20. For the past nine years, LCS has operated its Christian faith based school in a building located in the Village of Pinckney at 550 E. Hamburg Street in the southern portion of Livingston County.

21. Due to size constraints of its current facility and in furtherance of its religious mission of operating a Christian faith based school to serve the Livingston County community, it became necessary for LCS to move its school operations to a larger facility and to a location that is more geographically-centered in Livingston County.

22. To that end, LCS investigated several potential facilities in the City of Brighton, Hamburg Township, and the City of Howell, some of which were former public school buildings that had been closed, but all of which were not suitable for the relocation of Plaintiff's school for various reasons.

23. Ultimately, through its extensive search, LCS identified a facility owned by the Brighton Church of the Nazarene (the "Nazarene Church") located at 7669 Brighton Road in Genoa Township (the "Church Property") for the proposed relocation of the school.

24. The Church Property consists of approximately 16.5 acres. The buildings located on the Church Property in which the Nazarene Church conducts its worship services and ministries include a Christian education center, a sanctuary and church offices, an indoor recreational facility and a residential parsonage, which comprise a total of 37,620 square feet.

25. The Church Property is bounded to the west by another church, to the north by residential uses, to the east by Aljoanne Drive (a public road), and to the south by Brighton Road (a public road). Immediately across Brighton Road to the south is the Brighton High School with an enrollment of approximately 2,000 students in grades 9 through 12.

26. The Church Property is zoned Suburban Residential (SR) under the Township's zoning ordinance. Pursuant to section 3.03.02(l) of the Township's zoning ordinance, properties located in the SR zoning district may be used for "churches, temples, and similar places of worship and related facilities" upon the issuance of a special land use permit.

27. Since 1991, the Nazarene Church has conducted its worship services and ministries at the facilities on the Church Property through a special land use permit issued by the Township. The Nazarene Church conducts its worship services and public ministry programs on weekends and select weeknights, and approximately 1,000 people typically attend weekend worship services.

28. On November 25, 2014, LCS entered into a written lease (the "Lease") with the Nazarene Church, a copy of which is attached hereto as **Exhibit 2**. Pursuant to the Lease, the Nazarene Church agreed to lease a portion of its facility to LCS for the operation of its Christian school on the terms set forth therein. See **Exhibit 2**.

29. In March 2015, the Nazarene Church submitted a Special Land Use Application to amend its existing special use permit to allow LCS's proposed use of the Church Property as a Christian school. See Special Land Use Application attached hereto as **Exhibit 3**.

30. The special land use application sought approval for LCS to operate its Christian school under several conditions acceptable to LCS, including but not limited to, a maximum capacity of 32 employees and 250 students, start and ending times for the school day that

would be different than (and avoid conflict with) the start and ending times for the Brighton High School, and use of the existing Nazarene Church facilities for all of the LCS school operations. No additional buildings would be constructed on the Church Property as part of the special land use permit.

31. In support of the special land use application, the Nazarene Church submitted two traffic engineering studies performed by Boss Engineering ("Boss") and Fleis & VandenBrink ("F&V"). Based on the cumulative analysis of the current traffic conditions, the start and ending times of the LCS school operations, and the new traffic to be generated from the proposed school operations, Boss/F&V concluded in the traffic studies that the proposed use of the Church Property by LCS "will have minimal impact on Brighton Road" and "no impact" on the nearby traffic signals. See **Exhibit 4**.

32. For the purpose of analyzing the special land use application materials and assisting the Township in its decision-making process regarding the proposed school use, the Township engaged the services of two professional consultants - LSL Planning, Inc. ("LSL"), a professional land use planning firm, and Tetra Tech, a civil engineering firm.

33. The Township engaged LSL to review the application and all documents, reports and studies submitted by the Nazarene Church in support of the application to, *inter alia*, determine whether the proposed use is consistent with the criteria for approval of a special land use permit under section 19.03 of the Township's zoning ordinance. Among other conclusions, LSL determined that the proposed use is consistent with the overall goal in the Township's Master Plan to "accommodate a variety of land uses that are located in a logical pattern and complement community goals, the surrounding land uses, environment, capacity of roads and

the sanitary sewer, and public water system capabilities." See LSL report dated July 8, 2015 at p. 2, attached hereto as **Exhibit 5**.

34. In addition, section 3.03.02(l) of the Township's zoning ordinance delineates four conditions that must be satisfied in order for the Church Property to qualify for the proposed special land use permit. As part of its engagement, LSL (the Township's professional planning consultant) analyzed these requirements and concluded that the existing site conditions satisfied three of the four ordinance conditions (minimum lot size, the absence of any exterior building modifications, and access to a paved public roadway), and the proposed improvements as part of the special land use application satisfied the fourth requirement (landscape screening to buffer the adjacent residential use). See LSL report at pp. 3-4, attached hereto as **Exhibit 5**.

35. Tetra Tech (the Township's civil engineering firm) analyzed the Boss/F&V traffic studies on behalf of the Township. Tetra Tech approved the findings contained in the Boss/F&V traffic studies, and concluded that the Nazarene Church "has performed the analysis and provided the supporting data requested for managing the traffic for the proposed use." See Tetra Tech report dated July 7, 2015, attached hereto as **Exhibit 6**. Tetra Tech further informed the Township that it had no objections to the proposed site plan so long as LCS implemented the on-site traffic circulation management measures proposed as part of the special land use permit application. See Tetra Tech report attached hereto as **Exhibit 6**.

36. At a meeting on July 13, 2015, and consistent with the recommendations of its professional land use planning and traffic engineering consultants, the Township Planning Commission recommended that the Township Board approve the special land use permit with conditions

for the proposed school "based upon consistency with the standards of section 19.02 of the zoning ordinance."

37. Pursuant to section 19.02 of the Township's zoning ordinance, the recommendation of the Planning Commission was forwarded to the Township Board for a final decision regarding the amendment to the existing special use permit for the Church Property.

38. In connection with the Township Board's consideration of the special use permit request, the Township's Community Development Director issued a written recommendation, with the review and approval of the Township's Manager, a copy of which is attached hereto as **Exhibit 7**. In the July 16, 2015 report to the Township Board, the Township's Community Development Director:

   A. Recommended "**APPROVAL** of the special use permit with conditions . . . based upon consistency with the standards of section 19.03 of the zoning ordinance,"

   B. Recommended "**APPROVAL** of the environmental impact assessment" submitted by the Nazarene Church "which includes the [Boss/F&V] Traffic Impact Study dated June 23, 2015," and

   C. Recommended "**APPROVAL** of the sketch/traffic control plan" submitted by the Nazarene Church. [See **Exhibit 7** (emphasis in original)].

39. At the July 20, 2015 meeting of the Township Board, a motion was made to approve the special land use permit with conditions consistent with the recommendations of all of the Township's professional consultants, its Community Development Director and its Planning Commission. The Motion to "approve with conditions" failed by receiving only 3 out of 7 votes in support thereof, and no further action was taken at the meeting by the Township Board regarding the special land use application. See July 20, 2015 minutes of the Township

Board meeting, attached hereto as **Exhibit 8**. At no time during the July 20, 2015 meeting did the Township Board identify or discuss in any manner the existence of any governmental interest (compelling or otherwise) that would be affected by the issuance of the special land use permit or that would justify a denial thereof. **See Exhibit 8**.

40. Because the action of the Township Board on July 20, 2015 failed to comply with the requirements for the Board to take formal action on a special land use permit request under section 19.03 of the Township's zoning ordinance, the Board held another vote on August 3, 2015, in which the Township Board voted to deny the special use permit for the following proffered reasons:

    1.) The expanded use of the church to include a K-12 school will exacerbate the existing and historical negative impacts of the church on the adjacent neighborhood. **The need for active traffic management and restricted egress from the facility provides that the site cannot accommodate the use properly and it increases the potential for negative off-site traffic impacts.**

    2.) The proposed use is not consistent with the following goals of the Master Plan:
    a. "Achieve well-planned, safe, balanced, and pleasant residential neighborhoods."
    b. "Promote harmonious and organized development consistent with adjacent land uses."

    3.) The project is contrary to the statement of purpose for the Single Family Residential Zoning in regard to items 3.01.02(e.) and (g.) and (i 4.) .) as follows:

    a. 3.01.02(e.) – "Discourage any use of land which may overburden public infrastructure and services and the areas natural resources."

    b. 3.01.02(g.) – "Discourage land use which would generate excessive traffic on residential streets."

    c. 3.01.02(i.) – "Prohibit any land use that would substantially interfere with the development, utilization or continuation of single family dwellings in the District."

    5.) The proposed use significantly alters the existing or intended character of the general vicinity.

    6.) **The need for traffic management personnel and the potential off-site impacts created by forced right-turn only exiting will be detrimental to the natural environment, public health, safety or welfare by reason of excessive production of traffic. The proposed "D" condition on exit from Church grounds during pick-up and drop-off provides a detriment to the existing walking path, other neighborhoods/buildings for turn-around, in addition to**

**an impact on neighborhood travel including traffic from Worden Lake, Pine Creek, and travelers from the west towards Brighton. In addition, current conditions of this area also include the primary hub for the Brighton Area Schools, with Hornung (elementary), Maltby (intermediate), Scranton (7/8th grade) and Brighton High School. While not all students attending Scranton will flow through Brighton Road, Scranton was not taken into consideration. It is reasonable to suggest parents with students at both schools drop off at the High School and then proceed to Scranton which starts school at 7:50 a.m.**

7.) The potential negative impacts to be created by the use will not be sufficiently mitigated by the conditions of the proposal.

8.) The Nazarene Church has a history of non-compliance with past site plan and ordinance requirements resulting in a negative impact on surrounding neighborhoods, notably found in Planning Commission minutes from August 28, 2000, May 12, 2003, July 22, 2013 and April 2015 through current. Historical and consistent behavior suggests further non-compliance from petitioners. Specific issues include the following:

a. The applicant has not yet fully implemented the project approved by the Township in 2013. Of particular note are the installation of additional landscaping and parking lot islands;

b. The applicant has continued to allow a driver's testing operation, despite being informed that it is an illegal nonconforming use of the property; and

c. The applicant has demonstrated disregard for existing approvals by making significant changes to their building design contrary to the approved 2013 plans and without necessary permits or approvals to do so. [See draft minutes of August 3, 2015 Township Board meeting attached hereto as **Exhibit 9** (Emphasis supplied).

41. The decision by the Township Board is contrary to the recommendation of the Township's professional land use planning and traffic engineering consultants and the findings of the relevant traffic studies.

42. The decision by the Township Board is contrary to the recommendation of the Township's Community Development Director (as reviewed and approved by the Township Manager) that the special use permit with conditions be approved "based on consistency with the standards of section 19.03 of the zoning ordinance."  See **Exhibit 7**.

43. The decision by the Township Board is contrary to the recommendation of the Township's Planning Commission at its July 13, 2015 meeting that the special use permit with conditions be approved.

44. The action of the Township Board in denying the special land use permit, contrary to the recommendation of all of its professional consultants, its Community Development Director and its Planning Commission, imposes a substantial burden on the religious exercise of LCS.

45. The denial of the proposed use represents the imposition or implementation of a land use regulation in a manner that imposes a substantial burden on the religious exercise of LCS, its students, and their families. The denial in fact prevents LCS from using the land over which it has an existing leasehold interest, in any manner, for religious exercise in the operation of a Christian faith based school.

46. The substantial burden created by the denial of the proposed use does not further a compelling government interest.

47. Even if it were assumed that the LSC's proposed use affected a compelling governmental interest, the Township Board utterly failed to consider (much less adopt) any other conditions that would impose the least restrictive means of furthering that compelling government interest.

48. The proposed use by LCS for the Church Property is consistent with all regulations and standards of the Township's zoning ordinance regarding special use permit requirements as set forth in the Planning Commission findings, traffic studies, and professional consultant recommendations of the Township.

## COUNT I
## VIOLATION OF RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
### (Substantial Burden on Religious Exercise)

49. LCS hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

50. The Township has deprived and continues to deprive LCS of its right to the free exercise of religion under RLUIPA by imposing and implementing a land use regulation that substantially burdens LCS's religious exercise.

51. For the purposes of RLUIPA, the Township's denial of the proposed use to LCS constitutes "land use regulation[s]." 42 U.S.C. § 2000cc-5(5).

52. The Township's denial of LCS's zoning application violates §(a)(1) of RLUIPA. 42 U.S.C. 2000cc(a)(1).

53. The Township's denial of LCS's proposed use constitutes the imposition or implementation of land use regulations whereby the Township made, or had in place formal or informal procedures or practices of, individualized assessments regarding LCS's use of the Church Property within the meaning of §(a)(2)(C) of RLUIPA, 42 U.S.C. 2000cc(a)(2)(C).

54. The Township has arbitrarily and unjustly applied the Township Zoning Ordinance and its special use permit application provisions, to prohibit LCS from establishing a Christian school on the Church Property in order to carry out LCS's religious educational mission to its students.

55. Without a properly located school with adequate space and facilities for religious instruction, the LCS's ability engage in Christian-based educational instruction for the Livingston County community has been unduly limited and burdened.

56. The ability of LCS to provide its students with religious instruction is fundamental to LCS's

mission and is essential for its long-term viability.

57. The limitations imposed on LCS by the Township have substantially burdened the religious exercise of the LCS and its students.

58. By the imposition and implementation of a land use regulation that imposes a substantial burden on LCS's exercise of religion within the Township, the Township made an individualized assessment of the proposed use on the Church Property.

59. Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

60. The findings of the Township Board are contradictory to the objective evidence and prior recommendations given to the Township Board in favor of LCS's proposed use on the Church Property by the Township's own professional consultants and its own Planning Commission.

61. The use by LCS of the Church Property for its proposed Christian school use will not negatively impact existing traffic, neighborhoods, or public infrastructure and the purported justifications of the Township Board in denying the special use permit application do not constitute compelling governmental interests utilizing the least restrictive means necessary.

## COUNT II
## DECLARATORY JUDGMENT

62. LCS hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

63. LCS has a clear legal right under the Township Zoning Ordinance and under the relevant statutory provisions of RLUIPA set forth herein to have the special use permit approved for use of the Church Property as a Christian school, absent a compelling government interest utilizing the least restrictive means necessary.

64. The record is devoid of any credible evidence that the use of the property by LCS for a Christian school would create a traffic issue as set forth in the reports and recommendations of the Township's planning consultants and engineers.

65. The record is devoid of any credible evidence that LCS's proposed use of the Church Property will have a negative impact on adjacent neighborhoods or will negatively impact public infrastructure.

66. LCS is entitled to a judicial declaration that denial of the special use permit application is a substantial burden to the free exercise of LCS's religion, is not justified by a compelling government interest, and is in violation of RLUIPA in accordance with Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 and 2202.

## COUNT III
## INJUNCTION

67. LCS hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

68. LCS is entitled, after notice and hearing, to issuance of a preliminary and thereafter a permanent injunction enjoining the Township from enforcing any limitation upon LCS's use of the Church Property for religious uses, and requiring the Township to take whatever actions necessary to permit LCS to undertake such proposed use.

69. LCS is entitled to injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1343 permitting the use of the subject property as a Christian school by LCS.

70. If the decision by the Township to deny the revised special use permit for LCS is not overturned, LCS will suffer significant and immediate irreparable harm.

## COUNT IV
## STATUTORY ATTORNEYS FEES AND COSTS

71. LCS hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

72. LCS is entitled to attorneys' fees and costs herein as permitted by 42 U.S.C. § 1988.

73. This action has been necessitated by the Township's imposition of unlawful limitations on LCS's requested use of the Church Property as a religious Christian school and by the Township's failure to comply with RLUIPA.  Accordingly, LCS is entitled to recovery of its costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, LCS prays that this Court enter a Judgment against the Township that:

A. Declares that the Genoa Township's policies, practices and decision regarding the special land use permit, as alleged herein, constitute a violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc;

B. Declares and finds that the Township lacked the authority to deny the special use permit application, that the special use permit application should have been granted and that LCS is entitled to develop and use the Church Property as requested for the proposed school;

C. Declares that the limitations imposed on LCS by the Township are unreasonable, and bear no rational relationship to the public health, safety, and welfare that constitutes a compelling government interest;

D. Grants injunctive and declaratory relief permitting the requested special use permit application, such that LCS may establish a religious Christian school on the Church Property as requested;

E. Enjoins the Township, its officers, employees, agents, successors and all other persons in active concert or participation with it, from applying its laws in a manner that substantially burdens LCS's religious exercise in contravention of RLUIPA, and;

F. Grants attorneys' fees and costs incurred in this matter.

Respectfully submitted,

Dated: August 7, 2015

BY: /s/ Roger L. Myers (P49186
    MYERS & MYERS, PLLC
    Roger L. Myers (P49186)
    Matthew M. Hagerty (P66015)
    915 N. Michigan Avenue
    Howell, MI 48843
    Attorneys for Plaintiff
    Livingston Christian Schools